564 P.2d 425 (1977)
S. Donald ROWE, d/b/a Rowe Realty, Plaintiff-Appellee,
v.
Fred C. METZ, D. D. S., Defendant-Appellant.
No. 76-106.
Colorado Court of Appeals, Div. I.
February 10, 1977.
Rehearing Denied March 24, 1977.
Certiorari Granted May 23, 1977.
Thomas J. Curry, James C. Mallon, Denver, for plaintiff-appellee.
Calvert & Calvert, David R. Calvert, Denver, for defendant-appellant.
STERNBERG, Judge.
This appeal presents the question of what effect, if any, recent United States Supreme Court decisions have on suits for libel or slander against private individuals in Colorado. We consider the holding in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), although not a case involving a private party as defendant, to apply equally to suits against private as well as media defendants. Therefore, we reverse the judgment entered on a jury verdict awarding damages to plaintiff Rowe and against defendant Metz.
Alleging a reckless disregard of his rights, Rowe sued Metz for slander, seeking both actual and punitive danages. At the trial, Rowe proved, to the jury's satisfaction, that the slanderous statements had been made. However, he neither pled nor offered proof of actual damages. Instead he relied, and the trial court instructed, on the doctrine of slander per se where, in certain instances, damages are presumed. See Cinquanta v. Burdett, 154 Colo. 37, 388 P.2d 779 (1963); Kendall v. Lively, 94 Colo. 483, 31 P.2d 343 (1934); Kobey v. Eddy, 21 Colo.App. 140, 121 P. 948 (1912); McKenzie v. Denver Times Publishing Co., 3 Colo.App. *426 554, 34 P. 577 (1893). See also Restatement (Second) of Torts § 573 (Tent.Draft No. 20, 1974); and 50 Am.Jur.2d, Libel & Slander § 12.
Basic changes in the law of defamation have been wrought by Gertz v. Welch, supra. In Gertz, using the First Amendment as its springboard, the Supreme Court "federalized" major aspects of the law of defamation. Prior state law permitting compensation without proof of actual injury was found to be irreconcilable with a "competing interest grounded in the constitutional command of the First Amendment." In refusing to permit a jury to presume damages without proof of actual injury, the Supreme Court balanced the constitutional rights of free press against the retention of per se categories of defamation for the protection of reputation and gave greater weight to the former.
Justice Powell, writing for the majority, framed one of the principal issues in Gertz as "whether a newspaper or broadcaster that publishes defamatory falsehoods" about a private individual may claim the protection of the constitutional privilege first accorded the media in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); and expanded in Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); and Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971). The court found that such privilege could not be so claimed, but then went on to establish other principles applicable in defamation actions. Among these was the holding that:

"[S]o long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual."
In Walker v. Colorado Springs Sun, Inc., Colo., 538 P.2d 450 (1975), our Supreme Court analyzed the development of the law of defamation in the media context from New York Times to Gertz and examined the application of Gertz to a defamation action against a newspaper and its agents. Walker adopted knowledge of falsity, or reckless disregard of whether the statement was true or false, as the standard for liability of a media defendant in an action brought by a private party. Compare Time, Inc. v. Firestone, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976).
However, the majority opinion in Walker specifically left for future determination the issue that is before us here: Where it is proved that a slander was made neither with knowledge of its falsity nor in a reckless manner, may damages be awarded in the absence of proof of injury? In answering this question, we are faced with balancing the fundamental constitutional interest of freedom of speech against the interests of the individual in protecting his reputation and dignity. In so doing, we see no reason to relegate the constitutional right of free speech to a position inferior to that afforded to the press.
We are not unmindful of the fact that the majority opinion in Gertz is replete with references to "publishers and broadcasters," "the press and broadcast media," and "the news media." Similarly such seemingly restrictive references appear in the concurring opinion of Justice Blackmun and the dissenting opinions of Chief Justice Burger and Justice Brennan. And indeed, many commentators have urged that Gertz be limited to cases concerning media defendants.[1]
However, in the Gertz majority opinion, broad, all-encompassing language also appears. *427 The court stated it to be "necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury." And the court refused to reinstate a jury verdict "because the jury was allowed to impose liability without fault and was permitted to presume damages without proof of injury . . .." Also, the dissenting opinion of Justice White concludes that the majority opinion applies to all defamation actions, and we are unable to discern any compelling or even rational basis for distinguishing between media and non-media defendants. The First Amendment right of freedom of speech is entitled to no less protection than is accorded the First Amendment guarantee of freedom of the press. See generally Brosnahan, Frakt, Nimmer, supra, fn.1; Anderson, Libel & Press Self-Censorship, 53 Tex.L.Rev. 422, 442 n.95 (1975).
In a well-reasoned opinion deciding the precise issue before us, the court in Jacron Sales Co., Inc. v. Sindorf, 276 Md. 580, 350 A.2d 688 (1976), held that Gertz applies not only where private individuals are defamed in the media but also where, as here, the defamation is by a private individual.[2]
We also consider it persuasive that while New York Times, supra, like Gertz, arose in a media context, it has been applied broadly and repeatedly to non-media situations. See, e. g., St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968) (defamatory comments about deputy sheriff by candidate for public office); Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) (comments about judges by district attorney); Henry v. Collins, 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed.2d 892 (1965) (defamatory comments by private individual about police chief and county attorney); and Letter Carriers v. Austin, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974) (labor dispute).[3] Significantly, in Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), the Supreme Court rejected the assertion that the press enjoys greater rights than members of the public generally.
The position we adopt has been well articulated in Restatement (Second) of Torts § 580B, Comment d (Tent.Draft No. 21, April 5, 1975), wherein it is stated:
"As the Supreme Court declares, the protection of the First Amendment extends *428 to freedom of speech as well as to freedom of the press, and the interests which must be balanced to obtain a proper accommodation are similar. It would seem strange to hold that the press, composed of professionals and causing much greater damage because of the wider distribution of the communication, can constitutionally be held liable only for negligence,[4] but that a private person, engaged in a casual private conversation with a single person, can be held liable at his peril if the statement turns out to be false, without any regard to his lack of fault."
Similarly persuasive statements are found in The Supreme Court, 1973 Term, 88 Harv.L.Rev. 41 at 148, n. 52 (1974); Anderson, Libel & Press Self-Censorship, supra; and Davis v. Schuchat, supra. In Davis the court reasoned that to confine the New York Times line of decisions to media defamation would be both unconstitutional and illogical since the First Amendment "speaks equally of freedom of speech and of the press." Moreover, the opinion points out that giving the press greater protection than private speech would encourage people "to rush allegations into wide publication rather than to carefully present them to informed parties for verification or refutation in a more private setting." See also Robertson, Defamation and the First Amendment: In Praise of Gertz v. Robert Welch, Inc., 54 Tex.L.Rev. 199, 216 (1976).
For these reasons we hold that Gertz applies in non-media defamation actions and that thus the imposition of liability without fault is impermissible in such cases.
Having so held, we also hold that presumed or punitive damages may be awarded without proof thereof if a reckless disregard standard of liability is met. That standard, rather than a mere negligence standard, was chosen in Walker v. Colorado Springs Sun, Inc., supra. While it is true that in Walker the court was dealing with a media defamation case, nevertheless, it is logical to apply that standard in defamation actions against private defendants since the very basis of our decision here is that there is no rational distinction between freedom of speech and of the press in the defamation field.
Gertz tells us that:
"It is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury."
And Gertz also states that:
"[T]he States may not permit recovery of presumed or punitive damages at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth."
Thus, where reckless disregard is the standard applied and such is found, presumed and punitive damages are recoverable. Carson v. Allied News Co., 529 F.2d 206 (7th Cir. 1976); Davis v. Schuchat, supra.
Here, Rowe pled a reckless disregard of his rights by Metz. Consequently, if on a proper instruction of the "reckless disregard" standard, a jury would find for Rowe, then, even absent proof of actual damages, it could award both presumed and punitive damages under the doctrine of Gertz. Carson v. Allied News Co., supra; Davis v. Schuchat, supra; and Anderson, supra, at 473. However, inasmuch as the jury was instructed in accordance with slander per se principles that contravene the principles enunciated in Gertz, the jury verdict cannot stand, and the matter must be remanded for trial consistent with the views expressed herein.
Judgment reversed and cause remanded for a new trial.
COYTE and ENOCH, JJ., concur.
NOTES
[1] See Brosnahan, From Times v. Sullivan to Gertz v. Welch: Ten Years of Balancing Libel Law and the First Amendment, 26 Hastings L.J. 777 (1975); Eaton, The American Law of Defamation Through Gertz v. Robert Welch, Inc. and Beyond: An Analytical Primer, 61 Va. L.Rev. 1349 (1975); Frakt, The Evolving Law of Defamation: New York Times Co. v. Sullivan to Gertz v. Robert Welch, Inc. and Beyond, 6 Rutgers-Camden L.J. 471 (1975); Nimmer, Introduction-Is Freedom of the Press a Redundancy: What Does it Add to Freedom of Speech?, 26 Hastings L.J. 639 (1975).
[2] See also Bryan v. Brown, 339 So.2d 577 (Ala. 1976); Thomas H. Maloney & Sons, Inc. v. E. W. Scripps Co., 43 Ohio App.2d 105, 334 N.E.2d 494 (1976) (using language which would apply Gertz to private actions); Davis v. Schuchat, 166 U.S.App.D.C. 351, 510 F.2d 731 (1975). In the following cases, the courts indicate a disposition not to apply Gertz to non-media defendants. However they do not deal with the precise issue before us, and in each instance damages were awarded upon some showing of fault. Indeed, malice was the standard under which each of the defendants was held liable. Fopay v. Noveroske, 31 Ill.App.3d 182, 334 N.E.2d 79 (1975) (dictum: actual malice shown); Roemer v. Retail Credit Co., 44 Cal.App.3d 926, 119 Cal.Rptr. 82 (1975) (dealing with a statutory privilege accorded credit reports); Calero v. Del Chemical Corp., 68 Wis.2d 487, 228 N.W.2d 737 (1975) (dealing with employer reports to prospective employers; ruling based on conditional privilege and jury instruction based on malice).
[3] See also Noonan v. Rousselot, 239 Cal.App.2d 447, 48 Cal.Rptr. 817 (1966) (tabloid campaign material); Rowden v. Amick, 446 S.W.2d 849 (Mo.App.1969) (letter distributed to village residents); Moriarty v. Lippe, 162 Conn. 371, 294 A.2d 326 (1972) (letter charging police misconduct); Filliben v. Jackson, 247 A.2d 913 (Del. 1968), cert. denied, 394 U.S. 906, 89 S.Ct. 1012, 22 L.Ed.2d 217 (1969) (letter charging police misconduct); Flannery v. Allyn, 75 Ill.App.2d 365, 221 N.E.2d 89 (1966), cert. denied, 388 U.S. 912, 87 S.Ct. 2110, 18 L.Ed.2d 1352 (1967) (letter regarding police misconduct); Sas Jaworsky v. Padfield, 211 So.2d 122 (La.Ct.App. 1968) (statement calling plaintiff a communist); Rice v. Winkelman Brothers Apparel, Inc., 13 Mich.App. 281, 164 N.W.2d 417 (1968) (credit report); Beatty v. Ellings, 285 Minn. 293, 173 N.W.2d 12 (1969), cert. denied, 398 U.S. 904, 90 S.Ct. 1694, 26 L.Ed.2d 63 (1970) (statement at town meeting); Anderson v. New York Telephone Co., 42 A.D.2d 151, 345 N.Y.S.2d 740 (1973) (recorded telephone statements); Fox v. Kahn, 421 Pa. 563, 221 A.2d 181, cert. denied, 385 U.S. 935, 87 S.Ct. 292, 17 L.Ed.2d 215 (1966) (statement at public meeting). Cf. Richards v. Gruen, 62 Wis.2d 99, 214 N.W.2d 309 (1974). But see Brown v. First National Bank, 193 N.W.2d 547 (Iowa 1972).
[4] But see Walker v. Colorado Springs Sun, Inc., supra, which adopts a reckless disregard standard for Colorado as discussed more fully, infra.