Warren E. TYDINGS, Sr., Clifford Haynes, Jr., and Quillen's Point Development, Inc., a Delaware corporation, Plaintiffs Below, Appellants,

v.

Peter E. LOEWENSTEIN, and Loewenstein, Soule & Associates, Inc., a Delaware corporation, and Melvin L. Joseph Construction Company, a Delaware corporation, Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted: Feb. 5, 1986.

Decided: Feb. 24, 1986.

Stephen P. Ellis (argued), and Richard F. Stokes, of Tunnell & Raysor, Georgetown, for appellants.

Craig A. Karsnitz (argued), and William F. Taylor, of Young, Conaway, Stargatt & Taylor, Georgetown, for appellees Peter E. Loewenstein and Loewenstein, Soule & Associates, Inc.

Richard K. Herrmann (argued), and Phebe S. Young, of Bayard, Handelman & Murdoch, P.A., Wilmington, for appellees Melvin L. Joseph Const. Co.

Before McNEILLY, HORSEY and MOORE, JJ.

PER CURIAM.

The plaintiffs are developers of a tract of land in Sussex County, known as Quillen's Point. The defendants are a land surveyor, Peter E. Loewenstein, his firm, Loewenstein, Soule & Associates (collectively, Loewenstein), and Melvin L. Joseph Construction Company (Joseph). The defendants were sued in Superior Court for Loewenstein's alleged faulty design, and Joseph's construction of a bulkhead at Quillen's Point. The jury returned a verdict for defendants, and plaintiffs appeal. Appellants contend that the jury instructions (and omissions therefrom), and the admission of certain evidence constituted reversible error requiring a new trial.

To enhance the marketability of the development, plaintiffs wanted to dredge two man-made lagoons and construct a bulkhead to allow pleasure boating. Loewenstein prepared "permit drawings" and used them to get the necessary permits for the development of the land. Loewenstein also got some bids for plaintiffs, and memorialized his thoughts regarding the costs and building of the bulkhead in a letter informing plaintiffs that the cost estimates were based on a bulkhead which would last 20 years.

Two marine contractors, who submitted bids, advised Loewenstein that the permit drawings did not represent a bulkhead strong enough to last for 20 years. One of these contractors, Jahnigen, also conveyed this information to Smith, a real estate agent who was the "eyes and ears" of the plaintiffs. However, Smith did not relate this back to plaintiffs, and asked Loewenstein about it instead. Loewenstein apparently relieved Smith's concern, though Loewenstein testified that he informed Smith that the bulkhead was not considered designed until the permits were secured.

Joseph was doing road work in the development, and also offered to bid on the bulkhead job. Plaintiffs claim that their need for a 20-year bulkhead was made clear. Joseph later drafted a contract for the construction of the bulkhead, and the permit drawings were incorporated into the contract. It was fairly established at trial by the marine contractors that there are obvious significant differences between permit drawings and the more detailed construction drawings from which structures such as bulkheads, are built. Joseph erected the bulkhead solely in accordance with the permit drawings, and soon after completion the bulkhead began to fail. In the meantime, plaintiffs had sold several waterfront lots and no longer had official control over those portions of the bulkhead.

Plaintiffs sued Loewenstein and Joseph. Following a jury trial, a verdict was rendered for the defendants. This appeal followed.

■ On the state of this record we consider plaintiffs' most significant assignment of error to be an erroneous charge to

the jury regarding the standard of care applicable to Joseph's construction of the bulkhead. If the jury instruction undermines the jury's ability to perform its duty, this Court will reverse. *Haas v. United Technologies Corp.*, Del.Supr., 450 A.2d 1173, 1179 (1982).

At the prayer conference, plaintiffs urged that the applicable standard of care was that of a skilled bulkhead contractor. The court, however, instructed the jury as Joseph requested, that the standard of care was that applicable to other construction contractors in Sussex County. Plaintiffs urge that this was fundamental reversible error.

Restatement (Second) of Torts, Section 299A, provides that: "Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities." This standard has been adopted by Delaware courts. *Sweetman v. Strescon Industries, Inc.*, Del.Super., 389 A.2d 1319, 1324 (1978). Plaintiff cites several Connecticut cases which it insists compel the use of the work "skilled" in the instruction, and urges that "skilled bulkhead contractor" must be the standard because comment d. to § 299A states that one who holds himself out as having a higher level of skill incurs an obligation to have and exercise that level of skill. Plaintiff testified that one of Joseph's foremen held himself (and therefore the company) out as being skilled in bulkhead construction.

Defendant Joseph argues that it did not hold itself out as anything more than a construction contractor, and attempts to distinguish the Connecticut cases upon which plaintiffs rely. We think that these distinctions are meaningless and that neither side was completely correct in their prayers. Likewise, the trial court's instruction was incomplete.

The inquiry here is dual: first, what level of skill did Joseph hold itself out as having, and second, did it exercise that level of skill it was required to possess? The trial court's instruction on this issue imposed the skill "other construction contractors in Sussex County would use in performing a contract for the construction of a bulkhead in accordance with the plans and specifications incorporated into the contract," without charging that the jury must first decide whether Joseph held itself out as having a higher level of skill. This instruction is incomplete, especially in light of testimony by the marine contractors that an experienced bulkhead builder would recognize almost immediately that the permit drawings were "underdesigned", and that a bulkhead built according to those drawings would be insufficient to meet the developer's needs. Accordingly, we reverse the judgment in favor of Joseph.

Plaintiffs raise other issues which we address seriatim:

1. *The trial court erred in not instructing on negligence per se*

Plaintiffs urge that because the licensing of land surveyors and engineers is controlled by statute, there was negligence *per se* on the part of Loewenstein, a land surveyor, for practicing engineering without a license.

Title 24 of the Delaware Code governs professions. Section 2701(3) defines the practice of land surveying, and excludes the preparation of plans for construction projects. Section 2803(7) defines the practice of engineering, and Section 2802 forbids the practice of engineering without a license.

Plaintiffs urge that by Loewenstein's letter of September 2, 1981, defendant held himself out as an engineer and practiced engineering without a license. They claim that this violation of law was the proximate cause of the damage, and that Loewenstein, therefore, was negligent *per se*.

Section 2802 was promulgated "in order to safeguard life, health, and property," and plaintiffs argue that by *Sammons v. Ridgeway*, Del.Supr., 293 A.2d 547, 549 (1972), violations of statutes enacted for the public safety are negligence *per se.* Plaintiffs also cite *Carroll v. Getty Oil Co.*, D.Del. 498 F.Supp. 409, 412 (1980), for the criteria in applying negligence *per se:* the statute must embody a standard of conduct to protect the class of which plaintiff is a member, the defendant is required to conform to that standard of conduct, and the defendant did not so conform. However, as Loewenstein observes, the statutes involved here are licensing statutes which do not define a standard of conduct. We consider that point fatal to plaintiffs' argument, and find no error by the trial court in refusing to instruct the jury on negligence *per se.*

2. *The court erred in charging the jury on agency.*

Since there was a claim that Loewenstein had advised Smith, plaintiffs' real estate salesman, of the inadequacies of the former's permit drawings, Joseph requested, and the trial judge instructed the jury that "there is no duty to warn over inadequacies in the bulkhead plans if the plaintiffs had knowledge of the inadequacies or are charged with that knowledge." The purport being that if Smith is an agent of plaintiffs, his knowledge of the bulkhead's underdesign is imputable to them.

The trial court, which had earlier denied Joseph's motion to amend its pleading to include the defense of contributory negligence, ruled that such agency was not required by Superior Court Rule 8(c) to be specifically plead as an affirmative defense. Plaintiffs contend that this is a back-door method of invoking contributory negligence.

Plaintiffs argue that by *Lowe v. Hulliger*, Del.Super., 83 A.2d 698, 700 (1951), agency is an affirmative defense and must be plead affirmatively. However, a closer analysis of *Lowe* shows that the affirmative pleading was required there because the defense was an avoidance, i.e., that one signing a contract, while purporting to be an agent, was actually a principal.

Basically, the defense claims that plaintiffs vicariously knew of the defects in the plans, thus were contributorily negligent in allowing the construction. If that is so, they argue, any negligence by defendants does not give rise to liability. While couched in terms of agency, this defense clearly, is a back-door method by Joseph of arguing contributory negligence.

The defendants advance several arguments supporting the propriety of this duty-to-warn instruction. First, defendants contend that "notice to agent" is not an affirmative defense but a denial of the "failure to warn" claim. However, only Loewenstein can make this argument successfully. The only duty to warn here was allegedly on the part of Loewenstein, who had knowledge of the defects in the plans. However, if plaintiffs already had knowledge, there would be no duty to warn. Plaintiffs' knowledge can either be direct or by imputation through their agent, Smith. *Vechery v. Hartford Accident & Indemnity Ins. Co.*, Del.Supr., 121 A.2d 681, 684 (1956).

By Superior Court Civil Rule 8(c), contributory negligence must be affirmatively plead, and Joseph's efforts to amend its pleadings to include this defense were unsuccessful. Joseph argues that when evidence is admitted without objection, the pleadings are impliedly amended to conform to the evidence under *Filliben v. Jackson*, Del.Supr., 247 A.2d 913 (1968). Plaintiff did object to Smith's testimony, which was admitted through a reading of his deposition, but the grounds for objection are unclear, and it seems that the objection was not directed to the issue of contributory negligence, but on the use of a non-party deposition. Under such circumstances we cannot say that the trial court abused its discretion.

### 3. The trial court erred in allowing evidence of the sale of lots.

■ The plaintiffs argue that the trial court erred in allowing irrelevant evidence of lot sales, which prejudiced the plaintiffs by making them appear greedy and over-reaching. Plaintiff argues that by *Farny v. Bestfield Builders*, Del.Super., 391 A.2d 212 (1978) the measure of damages on a construction contract is the cost of repair or replacement, and that there should be no admission of evidence which goes to show diminution in value. But as the defense points out, the *Farny* case seems to allow evidence on the diminution of value:

> However, in the appropriate case, the jury may properly consider both the costs of restoration and the before and after value of the land itself. In instances where the costs of replacement are unreasonable or excessive in relation to the damage to the land itself, the Court will, in its discretion, allow the jury to consider more than one measure of damage in order to permit flexibility and achieve a just and reasonable result. *Id.* at 213–14.

Again, we do not consider this an abuse of discretion in submitting the issue to the jury.

### Conclusion

Because any errors do not affect the jury verdict in favor of the Loewenstein defendants, we AFFIRM as to them. However, we REVERSE the verdict as to Joseph by reason of the erroneous jury instruction regarding the standard of care applicable to a contractor. Accordingly, the matter is REMANDED to the Superior Court for a new trial on the issue of Joseph's liability to the plaintiffs.