## No. 18,154.

Louise C. Crosby *v.* Watsie F. Kroeger.

(330 P. [2d] 958)

Decided September 8, 1958.   Rehearing denied November 10, 1958.

Messrs. YEGGE, BATES, HALL & SHULENBERG, for plaintiff in error.

Mr. ROBERT L. PYLE, Mr. NORMAN B. SMITH, for defendant in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

THE parties appear here in reverse order to their appearance in the trial court. We shall refer to the plaintiff in error as the defendant and to the defendant in error as plaintiff.

The plaintiff in his complaint alleges that on October 6, 1954, the defendant was the owner and operator of a two-story apartment house located at 4202 West Thirty-eighth Avenue, in Denver, Colorado; that at about 8:00 P.M. on said date the plaintiff, pursuant to the invitation of a Mr. Maynard, went to said apartment house to make a combination social and business call upon Maynard, one of defendant's tenants, who occupied Apartment No. 12, located on the second floor of said apartment house, it being the rearmost apartment located on the left side of a hallway running through the center of said second floor; that plaintiff entered the front door of said apartment house and proceeded up the stairs to the second floor and proceeded in the hallway from front to back. When he arrived at a point about half way to Maynard's apartment, the hall lights went out, leaving plaintiff in total darkness; he waited two or three minutes, expecting the lights to come on, but they did not; he endeavored to get light from his cigarette lighter, but it would not light; he then proceeded slowly down the hall with his hands out in front, expecting to come to the end of the hall and find Maynard's apartment directly to the left. At the end of the hall was a stairway leading down to the first floor; there was a door at the top of the stairway, but it was open and plaintiff fell down these back stairs and suffered injuries, for which he claimed damages. It appears that the hall light was on the same circuit as that of Apartment No. 9, in which the tenant was using so many electrical appliances on the evening in question that it caused the circuit to break, leaving the hall in darkness. The plaintiff claims that having both the hall and apartment lights on the same circuit was negligence. Defendant's manager knew of this condition

and several times had reset the breaker switch, causing the lights to operate temporarily again.

The defendant in her answer denied negligence, charged the plaintiff with contributory negligence and assumption of risk, and also alleged that the injuries sustained were proximately caused by an unavoidable accident.

Trial was to a jury which, on October 4, 1956, found the issues in favor of the plaintiff and assessed his damages at $5,000.00. Judgment for $5,000.00 was entered on the verdict. On November 27, 1956, pursuant to plaintiff's motion, the judgment was amended to include interest, as prayed for in plaintiff's complaint in the amount of $371.67, being the amount of interest accrued on $5,000.00 from the date suit was filed until the date of judgment.

The defendant is here by writ of error, seeking reversal and dismissal of plaintiff's complaint, and urges as grounds therefor: (a) Error of the trial court in denying defendant's motion for a directed verdict, for the reason that the record shows the plaintiff was guilty of contributory negligence as a matter of law; (b) error of the trial court in denying defendant's motion for a directed verdict, for the reason that the "sole, proximate cause of the accident as a matter of law was the action taken by the plaintiff himself"; (c) error in admitting in evidence plaintiff's Exhibits J and K (provisions of the Denver Building Code and emergency lighting provisions), and the giving of Instruction No. 9, (which sets forth the provisions of the Code); (d) refusal of the trial court to give defendant's tendered Instruction No. 15-C (dealing with the duty of a landlord with reference to lighting halls), and (e) error in amending the judgment to include interest.

Assignments (a) and (b) appear to be the same; both deal with acts or omissions of the plaintiff which it is alleged constitute negligence on the part of the plaintiff as a matter of law. We treat them together.

█ Plaintiff, having been invited to the apartment of one of the defendant's tenants, had the status of an invitee, and the defendant owed to him the duty of maintaining the premises in a reasonably safe condition. In *Hooker v. Routt Realty Company,* 102 Colo. 8, 76 P. (2d) 431, we stated:

"Was plaintiff then an invitee, express or implied? It will be conceded that, on the occasions that she visited Stephens before, she was an express invitee, as a proper visitor to one of the guests of the hotel, entering the main lobby from the street and going on through the hall into Stephens's room. There is no doubt had she been injured because of some known defect within the hotel on those occasions that liability would attach. In such instances the mutuality of interest making her an invitee would be present."

In *Roessler v. O'Brien,* 119 Colo. 222, 201 P (2d) 901, we said:

"* * * When decedent entered the apartment house, and while a guest of Johnson, he was unquestionably an invitee, and as to him defendant was under a duty to maintain the premises where the invitee might be expected to go in a reasonably safe condition for their intended use and was under a like duty to the invitee to give him warning of any known latent or concealed defects. *Gotch v. K. & B. Packing and Provision Company,* 93 Colo. 276, 25 P. (2d) 719; *Rudolph v. Elder,* 105 Colo. 105, 95 P. (2d) 827."

█ Plaintiff had visited Maynard in Apartment No. 12 on one previous occasion. On the evening in question, while in the well lighted and comparatively strange hallway, without warning, due to defendant's negligence, the lights went out and the hallway was plunged in complete darkness. The plaintiff, thus having been placed in a position of peril, contemplating escape therefrom, knew there was a stairway behind him, which he had ascended, and a jog in the hall, which he had negotiated; he knew Maynard's apartment was ahead of him and to

the left; he believed that the hallway led to a wall in front of him. He waited for a few minutes, thinking the lights would come on. He tried to get light from his cigarette lighter, but failed. He then proceeded cautiously along the hallway seeking his destination. Counsels' contention that plaintiff, as a matter of law, did not act as a reasonably prudent person would and should act under such circumstances is not persuasive. The defendant created the peril with which plaintiff was confronted and is in no position to complain that plaintiff did not act with the wisdom of a Solomon.

In 38 Am. Jur., 875, §194, we find the following language applicable to the facts in this case:

"* * * The law does not expect one to exercise the same degree of judgment in an emergency wherein his personal safety is threatened, as in a situation where he is not subect to the fear of sudden disaster. The law recognizes the fact that a prudent man, when brought face to face with an unexpected danger, may fail to use the best judgment, may omit some precaution he might have taken, and may not choose the best available method of meeting the dangers of the situation. It does not charge him with contributory negligence for the fact alone that he makes a mistake in the method adopted to escape a peril which exists not through his fault, but through the negligence of another. * * *."

The question as to whether plaintiff's conduct under the circumstances constituted contributory negligence was a question of fact to be determined by the jury. The jury resolved the question in favor of the plaintiff and we think its conclusion is not only supported by the evidence, but is manifestly correct and should not be disturbed.

Counsel for defendant refer to numerous cases holding that one is guilty of contributory negligence as a matter of law and may not recover for injuries suffered as a result of proceeding in darkness where there is no compelling reason to proceed. Those cases are entirely dif-

ferent from the case before us. Here, the plaintiff proceeded in light until he was suddenly plunged into darkness because of defendant's negligence.

Whether a plaintiff is guilty of negligence which contributes to his injuries, is usually a question of fact to be determined by a jury, and when so determined under proper instructions will not be set aside. This case falls within that category.

Defendant urges as ground for reversal the giving of Instruction No. 9, wherein the court set forth verbatim certain sections of the ordinances of the City of Denver constituting the Building and Electrical Codes of the City and told the jury that said sections of the ordinances were in full force and effect October 6, 1954 (the date of the accident).

The defendant offered timely objections to the admission of any portion of said ordinance except Section 104 (h) which provides:

"(h) *Maintenance.* All buildings or structures, both existing and new, and all parts thereof, shall be maintained in a safe and clean, healthful condition. All devices or safeguards in buildings and structures which are required by this code or which were required to have been erected or installed pursuant to any previous building code or ordinance relating to design, construction, or quality of materials shall be maintained in good working order. The owner shall be responsible for the maintenance of buildings and structures."

Other provisions were admitted governing exits, exit signs and illumination, emergency lighting, alternate sources of current supply, location of switches for emergency lighting, etc. The evidence is uncontradicted and clearly shows that the defendant's apartment house, constructed in 1906 and last remodelled in 1947, does not conform to the above mentioned requirements of the 1949 Building and Electrical Code. Instruction No. 9 *did not,* nor did any other instruction, give an explanation

of the ordinance, its purposes, or applicability of the sections thereof to any issue in the case.

Unfortunately the portions of the ordinances admitted do not enable us to determine whether they pertain to requirements for future construction or whether they are safety measures regulating the occupancy of all structures in existence and occupied during the period the ordinance was in force.

Counsel for defendant in their brief point out that Section 103 (scope) and 104 (application to existing buildings) conclusively show that the 1949 code applies only to new buildings and does not operate retrospectively as to previously constructed buildings. Section 103 has the following exception: "except as otherwise provided in Sections 104-306 and 502 of this code." We do not have before us Section 306 and 502 and have no information as to what they provide. Section 104, subsection (a), has this exception: "unless otherwise specifically provided in this section, * * *." We have no means of knowing what is provided in Section 104 outside of (h). It is impossible for us to pass upon the meaning of an ordinance containing exceptions when we do not have the exceptions before us. It has been said many times that the exceptions often make the rule.

In addition we call attention of all counsel to the fact that objections to the admission in evidence of sections 103 and 104 (except subdivision h) were sustained and the same are not included in Instruction No. 9.

It is incumbent on a party seeking to introduce portions of an ordinance in evidence to offer sufficient thereof that the court may be able to intelligently pass on its meaning and its applicability, if any, to the issues involved. The portions of the ordinances admitted and submitted to the jury in this case fall far short of meeting this requirement. Their admission constitutes reversible error.

Counsel for plaintiff urge that even though it was error to admit the ordinances and to instruct with refer-

ence thereto, still it is not ground for reversal, for the reason that the record shows, even without the ordinances, that the defendant was guilty of negligence as a matter of law. We do not agree; the questions of negligence and contributory negligence were both jury questions. Clearly defendant's apartment house did not conform with many of the provisions of the ordinances admitted in evidence, and the jury may well have based its verdict on this fact alone.

Both counsel refer in their briefs to the case of *O'Brien v. City and County of Denver,* 127 Colo. 179, 255 P. (2d) 384, where the judgment of the trial court was affirmed without written opinion. We find reference to such cases as quite unhelpful in the resolution of questions presented for determination.

The defendant also assigns as error the refusal of the trial court to give tendered Instruction No. 15-C, as follows: "A landlord is under no obligation or duty to light stairways or halls for the benefit of his or her tenants or for visitors, unless a dangerous condition exists therein by reason of faulty construction, or unless there are hidden dangers therein known to the landlord and unknown to his tenants." To give the instruction would in substance be to determine as a matter of law that the plaintiff could not recover.

Counsel rely on language contained in *Miller-DuPont v. Service,* 120 Colo. 131, 208 P. (2d) 87, as authority for the giving of the tendered instruction. In that case the landlord had assumed the duty of lighting the stairway in question, but, due to a power shortage caused by war conditions, had been virtually forced to terminate this service for certain hours and did terminate the same during the hours when plaintiff was injured. The landlord had posted written notice of the termination of service and the injured tenant was well aware thereof. In the case at bar the defendant landlord had assumed the duty of keeping the hallway lighted and had never sought to terminate the duty, but negligently failed to

perform the duty assumed. The trial court correctly refused to give the instruction.

Defendant also complains of the fact that the trial court, some six weeks after the verdict was returned and judgment ordered in accordance with the verdict for the sum of $5,000.00 and costs, entered an order amending the judgment by adding thereto interest on $5,000.00 from the date of suit. Plaintiff in his complaint asked for interest pursuant to C.R.S. '53, 41-2-1, which provides:

*"Interest on damages.* — In all actions brought to recover damages for personal injuries . . . it shall be lawful for the plaintiff in the complaint to claim interest on the damages alleged from the date said suit is filed; *and, when such interest is so claimed, it shall be the duty of the court, in entering judgment* for the plaintiff in such action, to *add to the amount of damages assessed* by the verdict of the jury, or found by the court, *interest on such amount,* calculated at the legal rate from the date such suit was filed to the date of entering said judgment, *and to include the same in said judgment as a part thereof."* (Emphasis supplied.)

Thus, we see that plaintiff has done everything required by him to be done in order to be entitled to interest. The statute makes it mandatory on the court in entering judgment to include interest. The trial court, apparently through oversight, neglected to include interest at the time judgment was entered, and as soon as this oversight was called to the attention of the trial judge he corrected the judgment to include interest, thus bringing himself in compliance with the law. It is difficult indeed to comprehend counsels' contentions that we should reverse the trial court for performing a duty demanded by statute. Counsel appear to contend that the trial judge, on being notified of his oversight, should have stood in defiance of the law and refused to perform a ministerial act that is mandatory and does not require

the exercise of judgment or discretion. Such a contention has no legal or equitable appeal.

■ Rule 60 (a), R.C.P. Colo., provides:

*"Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. * * *."* (Emphasis supplied.)

. Clearly, the failure to include interest was an oversight or omission and falls squarely within the above rule.

Counsels' contentions in this connection would lead to a gross injustice and deprive plaintiff of $371.67 which he is entitled to as a matter of law.

The rules and their construction are not designed to work injustice, but rather:

" * * * They shall be liberally construed to secure the *just,* speedy, and inexpensive determination of every action." (Emphasis supplied.) — Rule 1 (a).

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

Mr. Justice Moore, Mr. Justice Day and Mr. Justice Frantz not participating.